UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-14007-CR-MARTINEZ/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOHN MCHUGH,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This cause comes before the undersigned for a final hearing on the Petition for Warrant for Offender Under Supervision ("Petition"). DE 24. This Court has considered all the evidence submitted, including the sworn testimony and exhibits, and arguments of counsel. Having done so, it is the recommendation of this Court that Petitioner be found to have violated his supervised release by failing to participate in sex offender treatment for the reasons set forth below.

    **I.**    **Procedural Background**

Defendant was originally convicted in the Eastern District of New York for possession of child pornography in violation of Title 18, United States Code, Sections 2252(a)(4)(B) and 2252(b)(2). DE 5 at 6. On March 28, 2014, he was sentenced to imprisonment for a term of thirty (30) months, followed by supervised release for ten (10) years. DE 5 at 8-9.

In October 2016, Defendant was released from prison and his case was transferred to the Southern District of Florida. DE 5 at 6. On January 3, 2017, the Honorable Jose E. Martinez modified Defendant's terms of supervised release to include performance of community service when he was not substantially employed. DE 2. Four months later, on May 18, 2017, Judge

1

Martinez revoked Defendant's supervised release because he accessed adult pornography and was untruthful with the probation officer, among other things.[1] DE 9; DE 20.  Defendant was sentenced to six months' imprisonment followed by lifetime supervised release.  *Id.*

Defendant was released from prison again in or around September 2017.  DE 38 at 22-24. On May 7, 2018, Judge Martinez modified the terms of supervision to include participation in the Location Monitoring Program for six months.  DE 22.  Two months later, on July 2, 2018, Judge Martinez modified the supervision terms to prohibit Defendant from entering or frequenting places primarily used by children.  DE 23.  On April 18, 2019, the pending Petition was filed alleging that Defendant failed to participate in sex offender treatment.  DE 24.  Defendant has denied the allegation.  DE 39.  This Court conducted a final hearing on May 9, 2019, May 10, 2019 and June 6, 2019.  DE 37; DE 38; DE 43.

## II.  Factual Background

Two witnesses testified at the final hearing:  Larry Auerbach ("Auerbach") and United States Probation Officer Robert Tango.  DE 37; DE 38; DE 43.  Officer Tango is Defendant's supervising probation officer.  Larry Auerbach currently provides individual and group sex offender treatment to all but one of the approximately twenty-eight (28) sex offenders on federal probation in the Fort Pierce Division of the Southern District of Florida.  DE 37 at 6-8; DE 43 at 48.  Auerbach obtained his master's degree in clinical social work in 1992.  DE 37 at 6.  Before private practice, he supervised the sex offender caseload for the Department of Corrections.  *Id.* The following recitation of facts is taken from the testimony of these two witnesses.

---

[1] Defendant admitted the violations, including Violation Number 4 which alleged that he failed to participate in a mental health treatment program because he was unsuccessfully discharged from treatment with Larry Auerbach, L.C.S.W.  DE 9.

Defendant was in Auerbach's sex offender treatment program for approximately three years.[2] DE 37 at 5. During that time, and specifically since his return after incarceration in 2017, Defendant's participation in treatment has been problematic, characterized by excessive delays in completing written assignments, refusal to follow his therapeutic plan to avoid triggering behaviors, inconsistency, procrastination, and lack of motivation and insight. DE 37 at 7-23; DE 41-1 at 1-19. Auerbach reported these problems to Officer Tango in monthly treatment reports and regular phone calls. DE 37 at 40; DE 41-1 at 1-19; DE 43 at 40-41. According to the treatment report from October 2017, Defendant seemed "motivated to change" when he first returned from prison and was attending two group sessions per week even though he was only required to attend one. DE 41-1 at 19. By December 2017, however, Defendant's motivation had waned and he "seldom followed through on what he said he would do." DE 41-1 at 17. The January 2018 treatment report specifically identified how McHugh had fallen behind in his assignments. DE 41-1 at 16. It observed that "John needs to get his revised Treatment Goals turned in as soon as possible, and is behind on three major written exercises (the Timeline,[3] Explosion Trail,[4] and Offense Clock[5]), as well as [behind] in the workbook." *Id.*

During the next year, McHugh failed to complete any of the three major written exercises, despite continued promises to do so. DE 37 at 16, 36-38; DE 41-1 at 1-19. He completed only

---

[2] Auerbach treated McHugh both before and after McHugh's most recent revocation in 2017, for which he served six months in prison. DE 37 at 6-7; DE 43 at 8.

[3] Although Dr. Auerbach did not testify in detail about this exercise, he identified it as one of three major written exercises that is a part of overall treatment to allow a participant to recognize high-risk situations, identify emotional triggers, and develop action plans to prevent them acting out in a sexually deviant manner. DE 37 at 9, 37.

[4] The Explosion Trail is one of three major written exercises that helps a participant identify warning signs for deviant behavior. DE 37 at 13, 26-27.

[5] The Offense Clock is one of three major written exercises that requires the participant to identify their feelings, thinking, and behavior at twelve different stages leading up to their offense. DE 37 at 27.

five chapters in the therapy workbook in three years even though the requirement was a minimum of one chapter per quarter. DE 37 at 16. Officer Tango and Auerbach also learned through pre- and post- polygraph interviews that Defendant was seeking out images of young children wearing swimsuits in magazines to visualize these children while he masturbated. DE 43 at 54-56. Defendant also was watching televisions shows such as Dance Moms and Toddlers and Tiaras that featured scantily clad children for the same purpose. *Id*. Defendant also was intentionally lingering in areas where he saw minor children in order to observe them from a far. *Id.* at 55-56.[6] Officer Tango reported these issues to Judge Martinez, who modified Defendant's supervised release to include six months' location monitoring and a prohibition on entering areas frequented by children. DE 22; DE 23.

By January 2019, Defendant still had not completed any of the written exercises and was not caught up in his workbook assignments. DE 43 at 39-40; DE 41-1 at 1-17; DE 37 at 37-38. On January 9, 2019, Auerbach and Officer Tango met with Defendant to discuss his lack of progress. They gave him ninety days to improve or he would be discharged. DE 43 at 39.

The record contains several sources of information about Defendant's participation in treatment during that ninety-day period. According to the monthly treatment reports, McHugh showed little to no progress in completing his assignments during the ninety-day period.[7] The March 2019 Report, for example, advised that "John was given a 90 day extension on a possible

---

[6] Defendant failed a polygraph in June 2018 but passed a polygraph in December 2018. Officer Tango testified that McHugh had "several failed polygraphs throughout his term." DE 43 at 49-57.

[7] The February 2019 Report to Officer Tango acknowledged that Defendant had been calling in and leaving a message as he said he would "although it isn't every night as he had agreed to." It noted that Defendant was still attending dual sessions in the evening and that he "usually participates in all of the group discussions." It further stated, however, that Defendant "rationalizes and justifies his inconsistent behavior. John gives minimal effort on his issues and expects praise for giving half measures. John admits he put exercises off until the last minute and he makes little effort to talk about his behavior." DE 41-1 at 3.

violation if he completed certain work [to] show a level of progress on or complete the Offense Clock, Explosion Trail and Time Line exercises, bring the workbook up to date; continue journaling and do so on a more focused and insightful manner, but John has failed to do so. He has consistently presented good ideas and makes plans he seldom and inconsistently executes, due to his lifelong habit of procrastination and avoidance." DE 41-1 at 2.

Auerbach and Officer Tango discussed Defendant's lack of progress in monthly phone calls, which were summarized in Officer Tango's chronological case file. DE 43 at 40-46. During a phone call on February 21, 2019, Auerbach advised Officer Tango that Defendant was "not following through in his commitments, he was not calling daily, not journaling, not completing his assignments." *Id.* at 40. In a call on March 22, 2019, Auerbach said McHugh had not completed any assignments and had not turned in any work. *Id.* at 46. On April 9, 2019—the ninety-day deadline—Auerbach told Officer Tango that Defendant was not living up to his agreement and "barring anything unexpected" would be unsuccessfully discharged. *Id.* at 41.

On cross examination, however, Auerbach was uncertain about which assignments Defendant completed during that ninety-day period. DE 43 at 25-28. Auerbach acknowledged that Defendant made some progress on the assignments by the ninety-day deadline, but not as much as Auerbach would have liked. *Id.* at 17. Defendant completed only one workbook chapter during the ninety-day period and needed to do much more than that in order to catch up. *Id.* at 25. Defendant "might have" completed two outstanding exercises in March, but Auerbach was unsure because he did not have his records with him while testifying. *Id.* at 26.[8]

---

[8] Auerbach acknowledged that his March 2019 report to probation did not indicate that Defendant did any presentations in March. He explained that any miscommunication resulted from the fact that the reports capture whatever "just happened," so an offender "may do something or accomplish something after [a] report was written that is not being taken into consideration" when Officer Tango receives the report. DE 43 at 28.

Comparatively, Officer Tango's notes are very specific about which assignments Defendant claimed to have done when confronted about his lack of progress during the ninety-day period. During a meeting on April 10th, Defendant said he had completed the Explosion Trail assignment and was planning to present the Clock assignment that night. *Id.* at 41-45. He had not completed the Timeline assignment. *Id.* at 45. After the April 10th meeting, Auerbach and Tango decided to discharge Defendant from treatment. *Id.* at 41-42.

On April 13, 2019, Auerbach drafted a final report discharging Defendant from treatment. DE 33-1. The report explained that although Defendant attended therapy consistently with average participation in group discussions,[9] his level of improvement was "below potential" and he was "resistant to therapy." *Id.* The report further indicated that Defendant did not complete the required assignments, appeared unmotivated to change his behavior, did not talk about his own issues in group discussions, avoided discussing his offense or motivation, had low ability to recognize high risk situations, and presented a high level of relapse risk. *Id.*

At the hearing, Auerbach elaborated further about why Defendant was discharged. He testified that Defendant procrastinated in completing the workbook chapters and written exercises. DE 37 at 14-17. Defendant failed to follow his therapeutic plan to prevent acting out on his impulse to sexualize minors when he saw them. *Id.* at 12-15. Although Defendant spoke up in group discussions by offering insights to others, he minimized his own issues and conduct. *Id.* at 7, 18-20. Defendant failed to say the affirmation on the affirmations card regularly and failed to internalize the affirmations. *Id.* at 9, 16. Defendant went to places he should not go and watched shows he should not watch because they were triggers for him. *Id.* at 20-21. In Auerbach's

---

[9] Auerbach explained that "average" participation meant in this context that McHugh "would speak up on occasion . . . offer insights, primarily to other people, not so much for himself." DE 37 at 7.

opinion, the more Defendant resisted his therapeutic action plan and allowed himself to engage in deviant thoughts and behaviors, the more likely he was to relapse and reoffend. *Id.* at 22-23.

### III. Analysis

Revocation of supervised release is treated as part of the penalty phase for the initial offense involved. To constitute a violation, the conduct involved need not be criminal and the defendant need only be found culpable by a judge under a preponderance of the evidence standard. *United States v. Cunningham*, 607 F.3d 1264 (11th Cir. 2010). The preponderance of the evidence standard "simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *United States v. Trainor*, 376 F.3d 1325, 1331 (11th Cir. 2004) (internal quotation marks omitted). Defendant's conditions of supervised release require his "participation in a treatment program for sexual disorders, as approved by the probation office." DE 17 at 2. "[T]he requirement of participation, meaning 'to partake, as to participate in a discussion,' requires more than just passive attendance at the counseling sessions or mere submission to treatment." *Heard v. Crosby*, 2005 WL 1712306, *3 (M.D. Fla. 2005) (*quoting* Black's Law Dictionary 1007 (5th Ed. 1979)). Participation means the Defendant is complying with the rules and expectations of the program as communicated to him by his therapist and/or probation officer. *See United States v. Poignant*, 767 Fed.Appx. 735, 741 (11th Cir. 2019).

The government has proved Defendant failed to participate in sex offender treatment by a preponderance of the evidence. The monthly treatment reports show Defendant's overall progress was deemed "Acceptable" only twice out of nineteen months of treatment between his return to

therapy after incarceration and his discharge from therapy in April 2019.[10]  DE 41-1 at 17, 19.  It was "Acceptable" in October 2017, which was his first month back, and in January 2018; otherwise it was "Unacceptable" throughout the rest of that time period.  DE 41-1. Defendant failed to complete any of the three major written assignments (Explosion Trail, Clock and Timeline) for over a year, despite being told repeatedly that these were expectations of the program.  *Id*.  He was woefully behind on the workbook chapters, having completed only five chapters in three years when he should have completed at least one chapter per quarter.  DE 37 at 14-17.  He did not say his affirmations daily or journal regularly, two therapeutic exercises designed to help him avoid triggering situations and refrain from engaging in risky behaviors.  *Id*. at 9-16.  He refused to follow his therapeutic plan to prevent acting out on impulses to sexualize minors or engage in risky behaviors.  *Id*.  Although he attended group and individual sessions regularly, he talked primarily about other people's problems and failed to discuss or challenge his own.  *Id*. at 7, 18-20.  Instead, he actively sought out images of children in magazines and on television, and only admitted this behavior when confronted with the prospect of polygraph examinations.  DE 43 at 49-57.  The testimony and documentation demonstrate his ongoing failure to successfully meet the expectations of the program.

Further, if McHugh did not know what he needed to do to "participate" in treatment successfully and avoid discharge from the program, the meaning surely became clear when his

---

[10] The parties dispute the relevant time period that should be considered in determining the violation.  The government argues the Court should consider the entirety of Defendant's treatment reports from the time he returned to therapy in October 2017 to the date of his discharge in April 2019.  Defense counsel argues the Court should consider only treatment reports from July 2018 (the date of the last modification to Defendant's supervised release) to discharge in April 2019.  This Court agrees with the government and takes into consideration Defendant's total participation (or lack thereof) since his return to sex offender treatment in October 2017.  There is no reason to limit his consideration to the most recent modification.  In addition, even if the Court limited its consideration only to treatment reports since July 2018 that would not help Defendant's case.   Since July 2018, Defendant has been marked "Unacceptable" on his overall progress 100% of the time. DE41-1 at 1- 10.

therapist and probation officer met with him on January 9, 2019.  At that meeting, they gave him ninety days to complete the Explosion Trail, Timeline and Offense Clock exercises, get caught up in the workbook, journal, read the affirmations card daily, and call his therapist every night with an update.  DE 37 at 37-39.  His ninety days expired on April 9, 2019.  By that time, according to his own admission as memorialized in Officer Tango's notes, Defendant had only completed one exercise, had not yet presented the second assignment (since he claimed he planned to do that the day of the meeting), and failed to do the third exercise entirely.  DE 43 at 44-46.  He also did not get caught up in the workbook and did not read the affirmations card consistently.   DE 37 at 38; DE 43 at 39- 42, 44-46; DE 41-1 at 2-5.  He failed to do these things despite knowing he was required to do them in order to remain in the program.

As a final matter, the Court addresses the fact that much of the testimony centered around whose decision it was to discharge McHugh from treatment.  At the May 9th hearing, Auerbach testified that Officer Tango made the decision to discharge the defendant.  DE 37 at 28-40.  After the hearing, Tango told Auerbach that he had lied or misrepresented facts by testifying that it was Tango's decision.  DE 43 at 49.  At the June 6th hearing, Auerbach conceded that the program is his so the decision whether to discharge a client ultimately belongs to him.  DE 43 at 15-20.  Auerbach acknowledged that he—not Tango—wrote the report indicating that Defendant was not performing as required and should be discharged.  DE 43 at 15.

Defense counsel argued that Auerbach changed his testimony between May 9th and June 6th because the federal probation office pays him to treat almost all of the sex offenders in the Fort Pierce division. DE 43 at 67-69.  The implication is that Auerbach had a financial motive to change his testimony in order to keep Officer Tango happy.  The undersigned does not see significant difference, however, between Auerbach's testimony on May 9th and June 6th.  At both hearings,

Auerbach stated that he would have given McHugh more time before discharging him because he tries very hard to avoid sending a client to jail.  DE 37 at 31-32; DE 43 at 17; 18-19.  Auerbach expressed his personal belief that therapy in his program is more productive than sending a person to prison.  DE 37 at 31-32; 39.  Auerbach's personal beliefs, however, are not relevant to the issue before the Court, which is whether Defendant violated his supervised release by failing to sufficiently participate in treatment.  The answer to that question appears to be yes.  The treatment reports and Auerbach's testimony show Defendant was procrastinating, not doing written exercises, not getting caught up in the workbook, not journaling and not saying affirmations as required.  Even after the ninety-day period, Defendant still had not completed all of the assignments.  Based on the evidence, this Court recommends that the government has met its burden to establish by a preponderance of the evidence that Defendant failed to participate in the sex offender program.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant has violated his supervised release in respect to Violation Number 1.  The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Jose E. Martinez, the United States District Judge assigned to this case.  Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida this  13th  day of August, 2019.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE